UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

'15 SEP 21 AM 9 19

U.S. DISTRICT
DIST.

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LOUIS BUONOCORE,<br><br>Defendant. | CRIMINAL NO.<br><br>15cr10272<br><br>VIOLATIONS:<br>18 U.S.C. § 371<br>(Conspiracy)<br>15 U.S.C. §§ 78j(b), 78ff(a) and<br>17 C.F.R. § 240.10b-5<br>(Securities Fraud)<br>18 U.S.C. § 981, 28 U.S.C. § 2461<br>(Criminal Forfeiture) |

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At times material to this Information:

1. Defendant, LOUIS BUONOCORE, was a resident of Massachusetts.

2. Co-conspirator-1 (CC-1) was a resident of Colorado.

3. Co-conspirator-2 (CC-2) was a resident of Ontario, Canada and was a stock promoter.

4. YaFarm Technologies, Inc. ("YaFarm") was a publicly traded company whose common stock was publicly quoted on the OTC Markets, Inc., an inter-dealer electronic quotation and trading system in the over-the-counter securities market.

5. The United States Securities and Exchange Commission ("SEC") is an independent agency of the executive branch of the United States government. The SEC is

responsible for enforcing federal securities laws and promulgating rules and regulations in keeping with the same.

### Scheme to Defraud

6. Beginning in or about September 2012, and continuing through at least August 2013, BUONOCORE, together with CC-1, CC-2, and others known and unknown to the United States Attorney, engaged in a scheme to manipulate the market for YaFarm's securities.

7. A "pump-and-dump" scheme, which typically involves the artificial inflation of the stock price of a publicly traded company (the "pump") so that individuals who control a substantial portion of the company's stock can sell shares of that stock at artificially high prices to other investors (the "dump"). Generally, such schemes effect the artificial inflation by, among other things, issuing news releases and/or promotional materials – often containing false or exaggerated information – and/or by engaging in undisclosed coordinated trading of the stock to inflate its price and generate the appearance of demand for the shares.

### Purpose of the Scheme

8. The purpose of the scheme was for BUONOCORE and his co-conspirators to unjustly enrich themselves by obtaining free-trading shares of YaFarm stock and selling these shares to the public at artificially high prices, which they engineered through false news releases and promotions, while concealing their control over YaFarm and the majority of its stock.

### Manner and Means of the Scheme

9. BUONOCORE and his co-conspirators accomplished their scheme by promoting to the public, and paying others to promote, YaFarm as a successful, operating company in the process of acquiring a flourishing, private institution, which was purportedly providing stem cell-based therapies to patients and building a state-of-the-art laboratory at a hospital in Cancun,

Mexico. In reality, as BUONOCORE and his co-conspirators knew, YaFarm had no meaningful operations and, contrary to the descriptions in YaFarm's press releases, the private institution being acquired was only in the beginning stages of development and lacked sufficient capital to construct a state-of-the-art laboratory.

10.    BUONOCORE and his co-conspirators further accomplished their scheme by: (1) using multiple nominee owners to conceal their ownership and control over the majority of YaFarm's free-trading shares; (2) appointing and controlling YaFarm's officers and directors and causing them to issue a four-to-one stock dividend, thereby substantially increasing the number of free-trading shares of YaFarm stock that BUONOCORE and his co-conspirators could sell; and (3) secretly orchestrating the sale of their shares to the public at the artificially high prices, which they had engineered through the issuance of false press releases and promotional alerts.

## Overt Acts in Furtherance of the Scheme

11.    In furtherance of the scheme and to accomplish its objectives, BUONOCORE and his co-conspirators committed, and caused to be committed, the following acts, among others, in the District of Massachusetts and elsewhere:

   a.    On various dates in or about and between October 2012 and December 2012, BUONOCORE and his co-conspirators caused their free-trading shares of YaFarm stock to be held in the names of nominees so as to conceal their ownership and control of YaFarm's stock from the SEC and other investors.

   b.    On or about December 14, 2012, BUONOCORE and his co-conspirators appointed YaFarm's officers and directors, and from on or about December 14, 2012, through approximately May 2013, BUONOCORE and his co-conspirators controlled

YaFarm through the officers and directors whom they had appointed, without disclosing their control over the company to the public.

c. On or about and between December 26, 2012, and December 28, 2012, BUONOCORE and his co-conspirators caused YaFarm's directors to issue a resolution approving a four-to-one stock dividend in order to substantially increase the number of free-trading shares of YaFarm stock that BUONOCORE and his co-conspirators could sell to the public.

d. On various dates in or about and between January 2013 and May 2013, BUONOCORE and his co-conspirators made payments to stock promoters to promote YaFarm.

e. On various dates on or about and between February 5, 2013, and May 21, 2013, BUONOCORE and his co-conspirators caused YaFarm to issue press releases and other news describing YaFarm's acquisition of a private institution, which was supposedly providing stem cell-based therapies to patients and building a state-of-the-art laboratory at a hospital in Cancun, Mexico.

f. On or about February 8, 2013, BUONOCORE and his co-conspirators caused YaFarm to issue a press release falsely stating that the private institution being acquired by YaFarm had begun construction of a world-class cell-processing and culture laboratory.

g. On or about March 6, 2013, BUONOCORE and his co-conspirators caused YaFarm to issue a press release falsely stating that significant progress had been made on the construction of the purported laboratory, when in fact no laboratory was ever being built.

h.   On various dates on or about and between January 30, 2013, and August 2013, BUONOCORE and his co-conspirators secretly orchestrated the sales of YaFarm shares at the artificially high prices which they had engineered through the issuance of false press releases and promotional alerts. For instance, on or about February 5, 2013, BUONOCORE sold approximately 4,000,000 shares of YaFarm stock through off-shore accounts at artificially high prices between $.14 and $.16, which resulted from a false press release issued by YaFarm and a false promotional alert issued by CC-2.

## COUNT ONE
## (18 U.S.C. § 371 – Conspiracy)

12. Paragraphs 1-11 are re-alleged and incorporated by reference as though fully set forth herein.

13. From in or about September 2012 and continuing through at least August 2013, in the District of Massachusetts and elsewhere, the defendant,

## LOUIS BUONOCORE

did conspire with CC-1, CC-2, and others known and unknown to the United States Attorney, to commit certain offenses against the United States, to wit: knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and national securities exchanges, directly and indirectly to use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, to wit, shares of YaFarm Technologies, Inc., in contravention of Rule 10b-5 (17 C.F.R. Section 240.10b-5) of the Rules and Regulations promulgated by the United States Securities and Exchange Commission, by (a) employing devices, schemes and artifices to defraud, (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of circumstances in which they were made, not misleading, and (c) engaging in acts, practices and courses of business which would operate as a fraud or deceit upon any person, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17 Code of Federal Regulations, Section 240.10b-5.

14. The purpose, manner and means, and over acts taken in furtherance of the conspiracy charged herein are set forth in paragraphs 8-11.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
**(15 U.S.C. §§ 78j(b), 78ff(a) and 17 C.F.R. § 240.10b-5 – Securities Fraud)**

15. Paragraphs 1-11 are re-alleged and incorporated by reference as though fully set forth herein.

16. From in or about September 2012 and continuing through at least August 2013, in the District of Massachusetts and elsewhere, the defendant,

## LOUIS BUONOCORE,

did knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and national securities exchanges, directly and indirectly use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities in contravention of Rule 10b-5 (17 C.F.R. Section 240.10b-5) of the Rules and Regulations promulgated by the United States Securities and Exchange Commission, and did (a) employ a device, scheme and artifice to defraud, (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of circumstances in which they were made, not misleading, and (c) engage in acts, practices and a course of business which would and did operate as a fraud and deceit upon others, in connection with the purchase and sale of shares of YaFarm Technologies, Inc.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a) and Title 17, Code of Federal Regulations, Section 240.10b-5.

## FORFEITURE ALLEGATION
### (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

17. The United States Attorney re-alleges and incorporates by reference paragraphs 1-16 of this Information, and further charges that:

18. Upon conviction of one or more of the offenses alleged in the Information, the defendant,

**LOUIS BUONOCORE,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. §2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such violations, including but not limited to the sum of at least $1,196,357 in United States currency which represents the proceeds of such violations.

19. If any of the property described in paragraph 18, above, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to the value of the property described in paragraph 18.

All in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

CARMEN M. ORTIZ<br>
United States Attorney

By: _____
ERIC P. CHRISTOFFERSON
Assistant U.S. Attorney
ANDREW J. PALID
Special Assistant U.S. Attorney

Dated: September 21, 2015